1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYRA RIDDLE, an individual; HAYLEY LOZANO RIDDLE, by and through her Guardian at Litem, Mariel Lozano Quintero; and MAX W. RID- DLE, by and through his Guardian at Litem, Marisol Cardenas,<br><br>                                         Plaintiffs,<br><br>                    v.<br><br>THE NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK. *et al.*,<br><br>                                         Defendants. | Civil No.       3:14-CV-01231-JLS (WVG)<br><br><br><br><br><br>**ORDER ON AMENDED PETITIONS TO APPROVE COMPROMISE OF THE CLAIM OF MINORS MAX RIDDLE (Doc. No. 25) AND HAYLEY LOZANO RIDDLE (Doc. No. 24).** |

        Before the Court is the Amended Petition to Approve Compromise of the

Claim of Minor Hayley Lozano Riddle and the Amended Petition to Approve

Compromise of the Claim of Minor Max Riddle ("Amended Petitions"). (Doc. Nos.

1

24, 25.) The Amended Petitions embody the agreement reached by the two minor plaintiffs–Hayley Lozano Riddle and Max W. Riddle ("Minor Plaintiffs"), each represented by a Guardian ad Litem appointed by the Honorable John S. Meyer of the Superior Court of California, County of San Diego–and Plaintiff  Mayra L. Riddle ("Adult Plaintiff")[1] (collectively, "Plaintiffs") and Defendant The National Railroad Passenger Company ("Defendant" or "Amtrak")  (collectively, "Parties"). Among other matters, the Amended Petitions specify the contingency fees to be collected by Kabateck Brown Kellner LLP ("Plaintiff Counsel"). With the changes detailed in this order, hereby incorporated into the Amended Petitions in full,[2] this Court GRANTS the Amended Petitions.

I.        **BACKGROUND**

          The Amended Petitions represent the Parties' compromise of the wrongful death claim brought by Plaintiffs as a result of the death of Mr. Shaun William Riddle, the father of Minor Plaintiffs and the husband of the Adult Plaintiff. (Doc. No. 24, at 2; Doc. No. 25, at 2.) The action was initiated by a complaint filed in the Superior Court of the State of California, County of San Diego, on April 1, 2014. (Doc. No. 1, at 2.) This action was removed to the United States District Court for the Southern District of California on May 16, 2014. (Doc. No. 1.) Amtrak filed an answer on May 23, 2014. (Doc. No. 4.) In October 2014, the Parties reached an agreement resolving this action. (Doc. No. 24, at 2; Doc. No. 25, at 2.) On October 17, 2014, Plaintiffs submitted the Motion to Approve Compromise of the Claim of Minor Hayley Lozano Riddle and the Motion to Approve Compromise of the Claim of Minor Max Riddle. (Doc. Nos. 23, 24.) In response to this Court's preliminary concerns, sent to Plaintiff Counsel by email on October 21, 2014, Plaintiff Counsel replaced these first iterations with the Amended Petitions now before the Court. On

----

[1]As an adult, the propriety of the share of Mrs. Riddle's settlement to be collected by Plaintiff Counsel is not the subject of this order.

[2] See infra 12.

October 30, 2014, the Honorable Janis L. Sammartino of the United States District Court for the Southern District of California referred this entire action to this Court ("Referral Order"). (Doc. No. 26.)

In sundry provisions, the Amended Petitions provide a slew of pertinent numbers. Defendant will pay $125,000 to Mayra Riddle, $50,000 to Hayley Riddle, and $50,000 to Max Riddle, a total payout of $225,000. (Doc. No. 24, at 3; Doc. No. 25, at 3.) Originally, a workers' compensation lien of over $300,000 existed; it now stands at $50,000. (Doc. No. 24, at 4; Doc. No. 25, at 4.) Per the Amended Petitions, from each minors' allotment and reflecting their proportional share of the relevant fees, costs, and liens, three sums are to be subtracted: $16,667.67 (Plaintiff Counsel's fees), $2,262.35 (fees and expenses incurred), and $11,110 (workers' lien). (Doc. No. 24, at 3; Doc. No. 25, at 3.) Notably, while the lawyers' fees reflect 33% of each minor's share (Doc. No. 24, at 3; Doc. No. 25, at 3), the Attorney/Client Retainer Agreements[3] stated a range of between 40% (if the case resolves before a complaint's filing) and 45% (if the case resolves after filing). Both agreements continue: "Attorneys' fees will be determined before costs and expenses." In total, of the $50,000 to be received from the Defendant, each minor will net $19,960.98.[4] (Doc. No. 24, at 3; Doc. No. 25, at 3.) When the fees to be collected from all parties are aggregated, compensation for Plaintiff Counsel will total $89,583.34. (Doc. No. 24, at 5; Doc. No. 25, at 5.) Of the sum paid by Defendant to the Plaintiffs, this figure amounts to 39.81%. But once the workers' lien of $50,000 is subtracted from the total settlement amount of $225,000, this percentage jumps to 51.19%.

---

[3] Plaintiff Counsel tendered these agreements to the Court by email on October 21, 2014.

[4] In identical Sections II.7, the Amended Petitions misstate each minor's share of the total costs as "$2,262.53." (Doc. No. 24, at 4; Doc. No. 25, at 3.) The total stated in both documents is also off by a cent; each minor's share should be $19,960.98, not $19,960.99. (Doc. No. 24, at 4; Doc. No. 25, at 4.)  One other typo appears in the Amended Petitions, the stray phrase "Petition and the attorney" on page five of both documents bereft of a predicate. (Doc. No. 24, at 5; Doc. No. 25, at 5.)

To justify its fees and costs, Plaintiff Counsel documented its efforts in two declarations, submitted under oath by its senior trial lawyer, Mr. Joseph M. Barrett, Esq., and appended to the Amended Petitions pursuant to this Court's request ("Declarations"). (Doc. No. 24, at 7--17; Doc. No. 25, at 7–17.) Having not kept detailed time sheets and thus forced to rely on the scanty "records kept and [its own] knowledge," Plaintiff Counsel "believe[s]" itself to have spent between 400 and 500 hours on this case." (Doc. No. 24, at 8; Doc. No. 25, at 8.) The hours were spent researching numerous legal issues and other Amtrak-related litigation, obtaining the relevant police report, conferring with the Parties and Amtrak's representatives, preparing and answering various discovery requests, personally evaluating the accident scene, and interviewing and retaining one named and several unnamed experts, Plaintiff Counsel having determined that this case's successful prosecution necessitated "various areas of expertise."  (Doc. No. 24, at 8–15; Doc. No. 25, at 8–15.) Many meetings were held for disparate purposes, including brainstorming and debating venue and jurisdiction. (Doc. No. 24, at 14; Doc. No. 25, at 14.) "Sometimes," conferences between senior Plaintiff Counsel were "extended and comprehensive." (Doc. No. 24, at 17; Doc. No. 25, at 17.) Because Plaintiffs' "analysis told . . . [them] that this was a potentially winnable case, because the physics of the event suggested that the train could have in fact anticipated the presence of . . . [decedent's] tow vehicle on the Chesterfield Drive, and had the potential to avoid it," Plaintiff Counsel focused on gathering and producing evidence. (Doc. No. 24, at 15; Doc. No. 25, at 15.)  While explor[ing] settlement discussions," Plaintiff Counsel attempted to minimize costs and eventually decided to concentrate on the settlement efforts that culminated in the Amended Petitions. (Doc. No. 24, at 16; Doc. No. 25, at 16.)

/

/

/

1   **II**          **DISCUSSION**

2   ***A.***     ***Jurisdiction***

3           The Referral Order authorizes this Court "to conduct all proceedings and

4   order entry of a final judgment in accordance with Civil Local Rules 17.1, 28 U.S.C.

5   § 636(c), and Fed. R. Civ. P. 73." (Doc. No. 26.).   Civil Rule 17.1 governs actions

6   involving minors or incompetents. S.D. Cal. Civ. R. 1.7. Section 636(c) of Title 28

7   allows a United States Magistrate Judge to conduct any or all proceedings in a jury

8   or nonjury civil matter and order entry of final judgment "when specifically

9   designated to exercise such jurisdiction by the district court" and with the parties'

10  consent. 28 U.S.C. § 636(c); <u>see, e.g.</u>, <u>Allen v. Meyer</u>, 755 F.3d 866, 868 (9th Cir.

11  2014) (discussing § 636(c)(1)). Among other matters, Federal Rule of Civil

12  Procedure 73 permits a magistrate judge to conduct a civil action or proceedings "if

13  all parties consent" and "when authorized under 28 U.S.C. § 636(c)(1). " FED. R.

14  CIV. P. 73; <u>Bell v. City of Boise</u>, 709 F.3d 890, 892 n.1 (9th Cir. 2014). As the

15  Referral Order makes clear, in accordance with these two procedural rules and one

16  statutory subsection and with the Parties' consent, the Amended Petitions are

17  properly before this Court.

18  ***B.***     ***Legal Standard***

19          In a federal proceeding such as this one, a lawyer's conduct, including his

20  or her proper share of any potential settlement between his or her client and one or

21  more defendants, is governed by the ethical rules of the relevant federal court.[5/] <u>In re</u>

22  <u>Snyder</u>, 472 U.S. 634, 645 n.6 (1985) ("[T]he state code of professional

23  responsibility does not by its own terms apply to sanctions in the federal courts.");

24  <u>Cord v. Smith</u>, 338 F.2d 516, 524 (9th Cir. 1964) ("When an attorney appears before

25

26  _____

27          [5/] The substantive law to be applied is irrelevant to this analysis. It is the nature of the
    court in which attorneys ultimately prosecute the relevant case that matters. Regardless, in this
    proceeding, the matter was properly removed due to the federal courts' exclusive jurisdiction

28  over matters involving the Defendant, 28 U.S.C. § 1349, subject to one inapplicable exception,
    (Doc. No. 1, at 3).

a federal court, he is acting as an officer of that court, and it is that court which must judge his conduct."); see also In re Am. Airlines, Inc., 972 F.2d 605, 610 (5th Cir. 1992) ("Federal courts may adopt state or ABA rules as their ethical standards, but whether and how these rules are to be applied are questions of federal law." (collecting cases)); cf. Maynard v. United States Dist. Court, 701 F. Supp. 738, 740 (C.D. Cal. 1988) ("The standards imposed by federal courts for admission of attorneys are matters of federal law." (collecting cases)). Thus, even though "state courts . . . are primarily responsible for the supervision of the conduct of members of the bar," In re Payne, 707 F.3d 195, 201 n.4 (2d Cir. 2013), and although "the appropriate guidance for finding the current national standards of ethical norms lies in the standards promulgated by the American Bar Association," In re Mitchell, 901 F.2d 1179, 1184 (3d Cir. 1990), leading to much uniformity amongst disparate courts, the standards dictating counsel's ethical responsibilities to their clients are specific to each federal district, Insituform of N. Am. v. Midwest Pipeliners, Inc., 139 F.R.D. 622, 624 (S.D. Ohio 1991) (citing In re Snyder, 472 U.S. at 645 n.6). Within the Southern District of California, this basic precept compels this Court to rely on two distinct sources of guidance in considering the Amended Petitions.

When a settlement implicates a minor's interests, as the Amended Petitions do, a special duty to dissect the merits arises under the Federal Rules of Civil Procedure. As the Court of Appeals for the Ninth Circuit has explained, this special duty "to safeguard the interests of litigants who are minors" is rooted in the language of Federal Rule of Civil Procedure 17(c)(2) ("Rule 17(c)(2)"), which states: "The court must appoint a guardian ad litem--*or issue another appropriate order*--to protect a minor or incompetent person who is unrepresented in an action." FED. R. CIV. P. 17(c)(2) (emphasis added), as construed in Robidoux v. Rosengren, 638 F.3d 1177, 1181 (9th Cir. 2011). "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to conduct its own inquiry to determine whether the settlement serves the best interests of the

minor." <u>Robidoux</u>, 638 F.3d at 1181 (internal quotation marks omitted) (quoting <u>Dacanay v. Mendoza</u>, 573 F.2d 1075, 1080 (9th Cir. 1978)). In undertaking this inquiry, a court must itself determine "whether the net amount distributed to each minor plaintiff in the proposed settlement is fair and reasonable, without regard to the proportion of the total settlement value designated for adult co-Plaintiffs and contracted by them with Plaintiffs' counsel." <u>Id.</u> at 1179; <u>see also, e.g.,</u> <u>Livingston v. Kempersports Mgmt., Inc.</u>, No. 1:12-cv-01427, 2014 U.S. Dist. LEXIS 121362, at *5– 7, 2014 WL 4320216, at *2–4 (E.D. Cal. Aug. 28, 2014).

In a more roundabout manner, California's Rules of Court apply with equal force. In this district, a lawyer's conduct is governed by Southern District of California Civil Rule 83.4. S.D. CAL. CIV. R. 83.4. Pursuant to its second paragraph, "[e]very member of the bar of this court and any attorney permitted to practice in this court must . . . comply with the standard of professional conduct required by members of the State Bar of California, and decisions of any court applicable professional conduct which are now adopted as standard of professional conduct of this court." S.D. CAL. CIV. R. 83.4(b).[6/]  Accordingly, to evaluate whether the Amended Petitions' contingency fee arrangement satisfied the ethical minimum required of Plaintiff Counsel, this Court turns to California Rule of Court 7.955, which requires a court to employ "a reasonable fee standard when approving and allowing the amount of attorney's fees payable from money or property paid or to be paid for the benefit of a minor." CAL. R. CT. 7.955(a)(1). It further reminds each court to "give consideration to the terms of any representation agreement made between the attorney and the representative of the minor . . . based on the facts and circumstances existing at the time the agreement was made." CAL. R. CT.

---

[6/] As this rule adds, California's state rules are not exhaustive. <u>Id.</u> More may be required so as to ensure the fair administration of justice within this district and deter conduct which "degrades or impugns the integrity of the court." <u>Id.</u>

1   7.955(a)(2).  A court "may" consider the following thirteen "nonexclusive factors":[7]

2   (1) "[t]he fact that a minor . . . is involved and the circumstances of that minor"; (2)

3   "[t]he amount of the fee in proportion to the value of the services performed"; (3) "

4   [t]he novelty and difficulty of the questions involved and the skill require"; (4)

5   "[t]he amount involved and the results obtained"; (5) "[t]he time limitations or

6   constraints imposed" by the minor's representative; (6) "[t]he nature and length of

7   the professional relationship between the attorney and . . .[the minor's]

8   representative"; (7) "[t]he experience, reputation, and ability of the attorney or

9   attorneys performing the legal services"; (8)  "[t]he time and labor required"; (9) the

10  representative's "informed consent" to the particular fee arrangement; (10) "[t]he

11  relative sophistication" of the minor's legal counsel and the minor's representative;

12  (11) the likelihood the attorney's acceptance of employment  effectively precluded

13  other opportunities; (12) whether the fee was "fixed, hourly, or contingent"; and

14  (13) the statutory requirements as to representation agreements applicable to

15  particular causes of action. CAL. R. CT. 7.955(2)(b)(1)– (12), (14).  If the fee is

16  contingent, another three factors must be considered: (14) "[t]he risk of loss borne

17  by the attorney"; (15) "[t]he amount of costs advanced by the attorney"; and (15)

18  "[t]he delay in payment of fees and reimbursement costs paid by the attorney." CAL.

19  R. CT. 7.955(2)(b)(13). Any court must consider these fifteen factors in the analysis

20  of a minor's settlement if a contingent fee is to be assessed. See Prudential Ins. Co.

21  of Am. v. Remington, No. 2:12-cv-02821, 2014 U.S. Dist. LEXIS 9209, at *4, 2014

22  WL 294989, at *2 (E.D. Cal. Jan. 24, 2014) (quoting and then applying this rule to

23  evaluating the reasonableness of an hourly fee arrangement); cf. Gonzalez v. Chen,

24  128 Cal. Rptr. 3d 604 (Cal. Ct. App. 2011) ("[T]he rule . . . does not require[] the

25  court to allow attorney's fees in an amount specified in a contingency fee

26  agreement." (internal quotation marks omitted)).

27

28  _____

[7] The Rule itself itemizes these factors differently.

8

Aside from this reigning standard, this Court cannot but take note of a well-established fact. In contingency fee systems, lawyers assume the risk of receiving no fee or a low fee for a share of any recovery. Lester Brickman, *Contingency Fee Abuses, Ethical Mandates, and the Disciplinary System: The Case Against Case-by-Case Enforcement of Contingency Fees*, 53 WASH. & LEE. L. REV. 1339, 1347 & n.27 (1996). An elevated fee is typically only permitted if the lawyer bears meaningful risk. Schweizer v. Mulvehill, 93 F. Supp. 2d 376, 403 (S.D.N.Y. 2000). As such, "charging a contingent fee grossly disproportionate to any realistic risk of nonrecovery would amount to charging a clearly excessive fee." In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig., 290 F. Supp. 2d 840, 850 (N.D. Ohio 2003) (internal quotation marks omitted) (citing Lester Brickman, *Contingent Fees Without Contingencies: Hamlet Without the Prince of Denmark?*, 37 U.C.L.A. L. REV. 29, 70 (1989)). Nonetheless, a range of 33% to 50% is widely utilized in the legal profession. Lester Brickman, *Contingency Fee Abuses*, 53 WASH. & LEE. L. REV. at 1347 & n.27; see also Adam Shajnfeld, *A Critical Survey of the Law, Ethics, and Economics of Attorney Contingent Fee Arrangements*, 54 N.Y.L. SCH. L. REV. 773, 775 (2009) (citing, among others, LESTER BRICKMAN ET AL., RETHINKING CONTINGENCY FEES 13 (1994), and HERBERT M. KRITZER, RISKS, REPUTATIONS, AND REWARDS: CONTINGENCY FEE LEGAL PRACTICE IN THE UNITED STATES 184 (2003)). Only rates over 50% are denied as a matter of course. BRICKMAN, RETHINKING CONTINGENCY FEES 17; see also OKLA. STAT. § 7.

## C.     *Application*

While some of the representations made in the Declarations beg for corroboration, the Court finds the fee to be reasonable and fair overall and that the Amended Petitions adequately protect the Minor Plaintiffs' interests.

Based on the Declarations, ten of the fifteen factors enumerated in California Rule of Court 7.955(b) are either inapplicable or not directly relevant. Neither declaration implies that Plaintiff's counsel labored under any temporal

constraints imposed by the Guardian ad Litem. CAL. R. CT. 7.955(b)(5). The relationship between this minors' representative and Plaintiff Counsel was neither personal nor preestablished; no hint of manipulation by the latter of the former so as to harm the minors can be gleaned from the existing record. CAL. R. CT. 7.955(b)(6). No suggestion that this representation precluded Plaintiff's counsel from performing other services graces the Declarations, and the Guardian ad Litem for each Minor Plaintiff gave her informed consent to the distribution at issue. CAL. R. CT. 7.955(b)(11), (9). Based on the Parties' papers, no federal or state law sets specific requirements as to a lawyer's representation in this kind of unique federal action. CAL. R. CT. 7.955(b)(14). The expertise of Plaintiff's counsel is just as irrelevant, as the fee sought in the lower end of the standard range and by no means an apparent premium for some specialized legal expertise. CAL. R. CT. 7.955(b)(7); Brickman, *Contingency Fee Abuses*, 53 WASH. & LEE. L. REV. at 1347. As the suggested fee does not reflect the costs advanced by the Plaintiffs, which are tabulated separately from the contingency percentage, and do not appear to be excessive in light of the Declarations, this factor has no decided bearing on the fees' reasonableness. CAL. R. CT. 7.955(b)(13)(B). Relatedly, Plaintiff Counsel has not formally claimed any unwarranted delay between the costs expanded and the recuperation it anticipates, depriving one more factor of much decisive weight. CAL. R. CT. 7.955(b)(13)(C). The fact that a minor is involved obviously matters, CAL. R. CT. 7.955(b)(1), as does the fact that the fee is contingent, CAL. R. CT. 7.955(b)(12)–(13), but both these verities guide the application of the remaining factors rather than themselves affect the relevant scale.

At its most basic, the remaining factors–the amount of the fee in proportion to the services' value, the skills necessary to successfully ligate this case, the amount involved and the results obtained, time and labor required and expanded, and the risk of loss borne by Plaintiff Counsel, CAL. R. CT. 7.955(b)(2)–(4), (6), (13)(A)–and Rule 17(c)(2) share a focus: whether a counsel has performed work and

incurred risk commiserate with a particular contingent fee percentage. In other words, in considering the Amended Petitions' reasonableness, the question this Court must ask is whether the Minor Plaintiffs obtained a decided financial benefit due to Plaintiff Counsel's efforts, fairly valued.  Whether perfect symmetry between effort and fee exists (or can even be posited) is neither knowable nor required. Reasonableness is the singular touchstone under both the California Rules of Court and Rule 17(c)(2). CAL. R. CT. 7.955(a); Robidoux , 638 F.3d at 1181 (construing FED. R. CIV. P. 17(c)).

   In reviewing the record, which mostly consists of the Declarations, the Court concludes the Amended Petitions award Plaintiff Counsel a reasonable share and adequately protects the Minor Plaintiffs' interests. In the underlying action, the Minor Plaintiffs possessed no certainty of a cent's recovery from Amtrak for its alleged negligence, and Amtrak's liability was not an established and certain legal fact at the complaint's initial filing. As such, Plaintiff Counsel *did* assume an unknown risk at the case's commencement, and it *did* net the Minor Plaintiffs a settlement without the hassle of a trial and one not necessarily merited by facts, both provable and admissible.[8] In fact, by merely reducing the Workers' Lien from more than $300,000 to $50,000, (Doc. No. 24, at 4; Doc. No. 25, at 4),[9] Plaintiff Counsel produced a tangible benefit for not only the Minor Plaintiff but also the Adult Plaintiff. If it remained at its original total, no Plaintiff would have received even a dollar. True, the Minor Plaintiffs will only collect $19, 960, but $19,960 is by no means an insignificant recovery for an action in which any greater recovery depended on procuring decided proof of Defendant's negligence, oftentimes (and here, unquestionably) a problematic and uncertain task. Plaintiff Counsel's share of

---

[8]Naturally, of course, until a trial commences, admissibility is a dormant issue.

[9] Oddly, Plaintiff Counsel propounds different numbers. In the Amended Petitions, the workers' lien originally totaled $300,000. In the Declarations, the number given is over $325,000. (Doc. No. 24, at 8; Doc. No. 25, at 8.) While such an ambiguous incongruence is disconcerting, it is nevertheless clear that the workers' lien was initially far larger than at it is at present ($50,000).

11

33%, moreover, is well within the average range for contingency agreements, a fact that further supports a finding of reasonableness, and Plaintiff Counsel is entitled to recover its documented–and seemingly reasonable–costs.[10/]

**III      ORDER**

For the aforementioned reasons, this Court GRANTS the Amended Petitions subject with the following three changes incorporated into both documents by this order: (1) the final share for each Minor Plaintiff is to be changed from "$19,960.99" to "$19,960.98" in both of the Amended Petitions; (2) each Minor Plaintiff's share is to be accurately stated in both Amended Petitions' Section II.7, "$2,262.53" replaced with "$2,262.35"; and (3) the original dollar amount of the workers' compensation lien is to be added to that same Section of the Amended Petitions.

IT IS SO ORDERED.

DATED:  November 5, 2014

_____
Hon. William V. Gallo
U.S. Magistrate Judge

---

[10/]In the absence of any opposition from any interested part and patent excessiveness, the Court is loathe to question good faith calculations, provided under oath by a member of the bar.